IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DARREN K.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 3:21-cv-435-MO

OPINION & ORDER

MOSMAN, District Judge:

    This matter comes before me on Plaintiff Darren K.'s Complaint [ECF 1] against Defendant Commissioner of the Social Security Administration. For the reasons given below, I AFFIRM the Commissioner's decision and DISMISS this case.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

## PROCEDURAL BACKGROUND

On March 25, 2018, Plaintiff applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, alleging disability beginning February 10, 2018. Tr. 158. The Social Security Administration ("SSA") denied his claim initially and upon reconsideration. Tr. 43, 60. Plaintiff appeared before Administrative Law Judge ("ALJ") Vadim Mozyrsky on June 24, 2020. Tr. 32-42. On August 12, 2020, the ALJ issued a decision denying Plaintiff's claims for benefits. Tr. 14-31. Plaintiff filed an appeal, and the Appeals Council denied review. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, February 10, 2018. Tr. 19. At step two, the ALJ determined that Plaintiff had the following severe impairments: status post right basal ganglia hemorrhage, left hemiparesis, neurocognitive disorder, adjustment disorder with depression and anxiety. Tr. 19. At step three, the ALJ found no impairment that met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 20. The ALJ assessed Plaintiff's residual functional capacity ("RFC"), as follows:

> to perform sedentary work as defined in 20 CFR 416.967(a) except pushing and pulling with the left upper extremity is limited to the occasional level; occasionally climbing ramps and stairs, never climbing ladders and scaffolds; occasional balancing, stooping, kneeling, crouching, crawling; occasional overhead reaching with the left upper extremity, frequent handling, fingering and feeling with the left upper extremity; no concentrated exposure to hazards such as unprotected heights working around moving mechanical parts, or operating a motor vehicle as a job requirement; simple repetitive tasks, and no tasks requiring public contact.

Tr. 21-22.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. 25. At step five, the ALJ found that Plaintiff retained the ability to perform other jobs

in the national economy, such as semi-conductor loader, circuit board taper, and semi-conductor bonder. Tr. 26. The ALJ therefore found Plaintiff not disabled. Tr. 27.

## LEGAL STANDARD

Courts must uphold the ALJ's decision if it "was supported by substantial evidence and based on proper legal standards." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). When "evidence is susceptible of more than one rational interpretation ... the ALJ's conclusion ... must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Errors in the ALJ's decision do not warrant reversal if they are harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## DISCUSSION

Plaintiff raises one issue with the ALJ's decision. He contends that the ALJ improperly weighed the medical evidence, resulting in a flawed RFC concerning the limitations on his left arm and hand.

### I. Medical Opinion Evidence

For claims filed after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important"

factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

State agency medical consultants Dr. Peter Bernardo and Dr. William Nisbet wrote that Plaintiff could work at the sedentary exertional level with postural and environmental limitations and with only occasional overhead reaching, handling, fingering, and feeling on the left side. Tr. 25, 53–55, 71–74. Dr. Bernardo further noted that Plaintiff had not seen a neurologist for evaluation after late 2018. Tr. 25, 49–50. Dr. Nisbet noted that Plaintiff stopped attending physical therapy in 2018. Tr. 68, 379–80, 421. The ALJ found Dr. Bernardo's and Dr. Nisbet's opinions somewhat persuasive and incorporated nearly all the limitations into the residual functional capacity. Tr. 21, 25. The ALJ did not, however, adopt the manipulative limitations to only occasional handling, fingering, and feeling on the left side, which would have limited Plaintiff to performing these activities only one-third of the workday. Tr. 25; *see also* Social

Security Ruling (SSR) 83-10, 1983 WL 31251, at *5 ("'Occasionally' means occurring from very little up to one-third of the time."). Instead, the ALJ limited Plaintiff to frequent handling, fingering, and feeling, finding that Plaintiff could perform these activities up to two-thirds of the workday. Tr. 25; *see also* SSR 83-10, at *6 ("'Frequent' means occurring from one-third to two-thirds of the time.").

First, the ALJ sufficiently evaluated the supportability of Dr. Bernardo's and Dr. Nisbet's occasional handling opinions by concluding there was a lack of record evidence to back their opinions up. The supportability factor requires the ALJ to evaluate the relevant objective medical evidence—that is, clinical signs and diagnostic findings, see 20 C.F.R. §§ 404.1502(c), (f), (g)—and the supporting explanations a medical source provides for their opinions. 20 C.F.R. § 404.1520c(c)(1). "An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation" when evaluating a medical opinion. *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). The ALJ concluded these opinions about Plaintiff's left hand limitations were not supportable because Plaintiff "exhibited only mild weakness in his grip strength by mid-2018." Tr. 25, 325-26. The ALJ also noted that Plaintiff could do several different types of manipulative exercises during PT sessions, such as four sets of ten repetitions with a hand gripper, set at 55 pounds. Tr. 338. And records from mid-2018 show that Plaintiff was independent in most activities of daily living, like eating, grooming, and dressing. Tr. 264. The ALJ acknowledged that Plaintiff's left hand grip was significantly weaker than his right hand, *see, e.g.,* Tr. 264, but reasonably concluded that Plaintiff could manipulate objects with his left hand and fingers for up to two thirds of the work day, based on the lack of supportability of Dr. Bernardo's and Dr. Nisbet's opinions that he could only do so for half as long. Because the

ALJ adequately evaluated the medical evidence underlying these medical opinions, the decision to give them little weight is supported by substantial evidence. 20 C.F.R. §§ 404.1502c.

The ALJ also reasonably considered that Dr. Bernardo's and Dr. Nisbet's opinions limiting Plaintiff to occasional handling with his left hand were inconsistent with other record evidence. An opinion's persuasiveness is in relation to its consistency with evidence from other sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *Woods*, 32 F.4th at 792. Specifically, the ALJ focused on the fact that Plaintiff did not seek any medical treatment for his left hand at all after January 2019, almost a year and a half before his administrative hearing in June 2020. Tr. 23, 32, 397-407. The ALJ also noted that at physical therapy appointments in the fall of 2018, Plaintiff's providers found he had "good potential to achieve established goals to address the documented impairments by participating in skilled physical therapy." Tr. 333. But Plaintiff stopped going to PT, and claims—based on his own conclusions—that there was no treatment available to improve his left hand symptoms. Pl. Br., ECF No. 16 at 10-11, Pl. Reply, ECF No. 21 at 3. The ALJ reasonably concluded that Dr. Bernardo's and Dr. Nisbet's occasional handling opinions conflicted with the PT records reflecting improvement in strength and coordination in Plaintiff's left hand, and with the lack of record evidence of medical care after January 2019. *See, e.g.*, Tr. 326. The ALJ rationally concluded the PT notes showing "good potential" for improvement, combined with Plaintiff's failure to attend further PT appointments in 2019 and 2020 conflicted with an "occasional" limitation suggested by Dr. Bernardo and Dr. Nisbet. The ALJ sufficiently analyzed the relevant evidence[2] under the consistency factor as well, and that the decision to find these opinions unpersuasive was supported by substantial evidence.

---

[2] Plaintiff also argues the ALJ failed to address two other pieces of the medical record that support Dr. Bernardo's and Dr. Nisbet's occasional handling limitation. *See* Pl. Br., ECF No. 16 at 9-10. Plaintiff first cites the physical therapy notes—with the ALJ did in fact consider—

Plaintiff also argues it was error for the ALJ to find Dr. Bernardo's and Dr. Nisbet's occasional handling opinions unpersuasive and substitute the "frequent" handling limitation into the RFC without another, conflicting medical opinion to contradict them. But Plaintiff misunderstands the ALJ's role. "The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Social Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). The final RFC is not a medical issue dependent on a doctor's opinion; it is an administrative finding of fact based on evidence in the entire record. 20 C.F.R. § 416.946(c); SSR 96-5p, available at 1996 WL 374183, at *5. The residual functional capacity finding can derive from reports of daily activities, lay evidence, medical source statements, the effects of treatment, recorded observations, and other evidence. SSR 96-8p, available at 1996 WL 374184, at *5. Thus, the issue is whether, based on the entire record, the ALJ adequately accounted for Plaintiff's limitations in the residual functional capacity, not whether there was a specific medical opinion underlying every limitation in the RFC. Here, in addition to the medical

---

and argues they support the occasional handling limitation because they show "severely impaired sensation" in Plaintiff's left hand. *Id.* (citing Tr. 326). These same records show improvement, gross dexterity and fine motor coordination (FMC), that was "slower than expected," but had "good potential" to improve if Plaintiff had kept attending PT. Tr. 326, 333. Plaintiff did not do so, and the Court reasonably concluded the resulting lack of records from January 2019-on conflicted with the limitations Drs. Bernardo and Nisbet imposed.

Plaintiff also argued the ALJ "ignored the observations by Dr. Grief that Plaintiff's left arm was obviously limited to no more than the role of an assist. Tr. 384. According to Plaintiff, the ALJ failed to explain how the opinions of Drs. Bernardo and Nisbet are inconsistent or not supported by these observations. Pl. Br. at 10. But again, the ALJ considered and accounted for Dr. Grief's notes regarding Plaintiff's left arm. Tr. 23. The ALJ specifically acknowledged that Plaintiff still had weakness on his left side in November 2018 during his meeting with Dr. Grief. Tr. 23, 384. And as noted above, the residual functional capacity reflected this weakness as well as the ALJ's other considerations that included Plaintiff's lack of treatment after January 2019, his activities of daily living, and his work for several months in 2019.

Because the ALJ considered both pieces of evidence Plaintiff argues he left out, and simply interpreted them differently than Plaintiff, the Court finds no error here either.

7 – OPINION & ORDER

assessments, the ALJ considered Plaintiff's treatment records, his improvement, his lack of additional treatment, his activities of daily living, and his work for several months in 2019 of which Drs. Bernardo and Nisbet had no knowledge. Tr. 21–25. The ALJ had sufficient evidence regarding Plaintiff's abilities, as summarized in the decision and supported by the record. Tr. 21–25. As noted above, substantial evidence supports the ALJ's conclusion that Plaintiff could perform a reduced range of sedentary work that included frequent handling, fingering and feeling with the left upper extremity, and Plaintiff has identified no other error in the RFC.

## CONCLUSION

For the reasons given above, I AFFIRM the Commissioner's decision and DISMISS this case.

IT IS SO ORDERED.

DATED: 8/30/23

MICHAEL W. MOSMAN
United States District Judge